IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELIZA MAE SCOTT, | ) |
| | ) |
|     CLAIMANT, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 2:16-CV-00663-KOB |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
|     RESPONDENT. | ) |
| | ) |

MEMORANDUM OPINION

I.   INTRODUCTION

On June 27, 2013, the claimant, Eliza Mae Scott, protectively applied for supplemental social security income and disability insurance benefits because of her status after a motor vehicle accident with degenerative disc disease, degenerative joint disease, and obesity. The Commissioner denied the claims initially on August 27, 2013. The claimant timely requested a hearing before an Administrative Law Judge, and that hearing took place on December 10, 2014. (R. 34, 43).

In a decision dated January 26, 2015, the ALJ found the claimant not disabled under Title XVI or Title II, because medical evidence does not support her subjective testimony. The claimant filed a timely request for a hearing before the Appeals Council on April 16, 2015. The Appeals Council denied the claimant's appeal because her new evidence did not provide a basis

1

for changing the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner on January 26, 2015.

The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner. (R. 13, 43).

## II. ISSUE PRESENTED

The claimant presents the following issues for review:

(1) whether the ALJ committed reversible error in applying the subjective pain standard.

(2) whether the ALJ committed reversible error by not properly evaluating claimant's additional medical evidence submitted after the ALJ's decision.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986)[1]; 20 C.F.R. §§ 404.1520, 416.920.

## V. FACTS

The claimant was 52 years old at the time of the ALJ's final decision; had completed the 9th grade; had past substantial gainful experience as a security guard, forklift operator, order filler, home attendant, and stylist; and alleges disability based on her status after a motor vehicle accident with degenerative disc disease, degenerative joint disease, and obesity. (R. 53, 66-67, 187, 206).

*Physical Impairments*

The claimant's problems came to light on January 26, 2013, when Regional Paramedic transported the claimant to St. Vincent's Birmingham Emergency Room because of whiplash from being rear ended in a motor vehicle accident. The claimant complained of upper back pain, midline neck pain, and headaches, and she denied any upper or lower extremity pain. Dr. Jerod Lindsey Lunsford, an emergency room physician, treated the claimant, and prescribed her Lortab

---
[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI), but the same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

(for pain) and released her the same day. Dr. Allen B. Oser, a radiologist at St. Vincent's Hospital Radiology/Medical Imaging, analyzed the CT taken of the claimant, and found no evidence of acute traumatic injury or any acute abnormality, but did find degenerative discs in her cervical spine on January 27, 2013. (R. 237-238, 243, 247).

On February 7, 2013, the claimant visited Alabama Spine and Rehabilitation Center after her accident, complaining of headaches and measuring her neck pain as eight on a ten point scale. Dr. Dory Curtis, an orthopedist, found that the claimant had a neck strain with no signs of any neurologic problems and had normal strength in her upper extremities. On February 11, 2013, Dr. Curtis assessed that the claimant needed six weeks of rehabilitation with a home exercise program. (R. 251-255).

Between February 7, 2013 and April 17, 2013, Alabama Spine and Rehabilitation Center treated the claimant fourteen times and Dr. Curtis found on March 28, 2013, that she still complained of the same level of neck pain but had normal strength in her upper extremities, looked and walked very comfortably, and moved her neck well. Dr. Curtis found her alleged pain to be out of proportion and ordered an MRI of the claimant. (R. 252, 254).

On March 28, 2013, Dr. A. Sandy, a radiologist at Vestavia Hills Imaging Center, LLC, analyzed the claimant's MRI of her cervical spine. Dr. Sandy found that the claimant's C3-4 had disc desiccation with moderate bilateral neural foraminal stenosis which is narrowing of the cervical disc space; her C4-5 had disc desiccation with severe neural foraminal stenosis that was worse on her left side; her C5-6 had disc desiccation and anterior osteophyte formation with severe bilateral neural foraminal stenosis (compression of spinal nerves). Dr. Sandy also found widespread cervical spondylosis (wear and tear affecting spinal disks) in the neck. On April 4, 2013, Dr. Curtis found that the MRI showed severe disc justification and degenerative disc

disease that was likely aggravated but not caused by the accident, and he recommended epidurals at C3-4, C4-5, and C5-6 disc levels. (R. 281, 291-292).

On May 6, 2013, Dr. Matthew David Berke, an orthopedist focusing on physical medicine of rehabilitation, gave the claimant an epidural at her C6-C7 disc level because of Dr. Curtis's recommendation. On May 20 and June 24, 2013, Dr. Berke gave the claimant epidurals at her L4-L5 disc level. (R. 297-299).

On June 25, 2013, CRNP Lafayette Holmes of Cooper Green Mercy Hospital treated the claimant for prescription refills and prescribed the claimant Lisinopril/HCTZ (for hypertension), Paxil (for anxiety), and Ultram (for chronic spinal tenderness). (R. 309, 311).

On June 27, 2013, Dr. Rowell Ashford, an OBGYN at Cooper Green Mercy Hospital, treated the claimant for a follow up on an ultrasound to evaluate her asymptomatic fibroid uterus. Dr. Ashford assessed that the claimant had herniated discs in her neck. Dr. Ashford reported the claimant's current prescriptions of HCTZ 25/ Lisinopril and Linopril (both for hypertension). (R. 305-307).

On June 28, 2013, Dr. Leonardo Almeida, a neurologist at Cooper Green Mercy Hospital, treated the claimant for neck pain from her accident on January 26, 2013. Dr. Almeida found the claimant had 5/5 motor strength with normal coordination and gait. Dr. Almeida prescribed Neurontin (for neck pain). (R. 303, 304).

After applying for social security income and disability insurance benefits on June 27, 2013, and at the request of the Disability Determination Service, the claimant on August 14, 2013 met with Dr. Trevor Turner, a consulting specialist in physical medicine of rehabilitation. The claimant complained of neck and back pain and, although she did not use any assistive device, she requested one. Dr. Turner found that the claimant could walk without difficulty; sat

comfortably; took her shoes on and off without difficulty; and had unremarkable coordination, station, and gait. She had a normal range of motion of the cervical and lumbar spine but had limited range of motion during the exam of the knees. The claimant's gross motor skills were intact. Dr. Turner questioned the claimant's effort in her bilateral upper and lower extremities exam. Dr. Turner determined that the claimant had no limitation for walking or sitting; she is limited to standing up to six hours; she needs no assistive device; she could lift 25-50 pounds frequently; she has no limitation in reaching, handling, fingering, or feeling; she has no limitations in climbing stairs; she can occasionally climb ladders and can stoop, kneel, crouch, or crawl; and she has no limitations in workplace environmental activities on hearing, speaking, traveling, or hazards. (R. 338-342).

On September 17, 2013, Dr. Delbert Hahn, a radiologist at Cooper Green Mercy Hospital, took a minimum of four views of the claimant's lumbar spine and found that the claimant had degeneration of the mid and lower lumbosacral discs with sacralization of her L5 disc with facet arthropathy (lower back pain with joint disease). (R. 376).

On November 18, 2013, Dr. James Floyd, an orthopedic surgeon at Cooper Green Mercy Hospital, treated the claimant for neck and back pain. Dr. Floyd found that the claimant's cervical exam showed limited range of motion in her neck and that she tested low for strength overall. He also ordered an MRI. (R. 367-368).

On October 1, 2013, Dr. J. Walden Retan, an internist at Cooper Green Mercy Hospital, noted that he was disturbed that the claimant did not describe her pain as burning, sticking, shooting, or stabbing and that she has no response to Lortab for pain. He also noted that the claimant's daughter "broke in with questions about speckled Lortab as opposed to plain white

Lortab and encouraged her mother to opt for Lortab 10 as opposed to methadone." Dr. Retan prescribed the claimant two weeks of Lortab 10, up to 5 tablets daily. (R. 347, 366).

On October 31, 2013, Dr. James Coffey, an internist at Cooper Green Mercy Hospital, treated the claimant for neck pain. Dr. Coffey assessed that the claimant has benign hypertension, generalized anxiety disorder, cervical spondylosis, and lumbosacral neuritis. (R. 363).

On February 7, 2014, Dr. Retan noted that the claimant complained of pain in her back, right knee, ankle, and foot, and that she walked with a walker. On May 9, 2014, Dr. Retan noted that the claimant complained of "charley horse" pain in her leg, for which he prescribed Neurontin. (R. 347).

On June 11, 2014, Dr. Brannon Vines, a clinical neurologist at Cooper Green Mercy Hospital, treated the claimant and ordered an MRI because of her neck pain, though she appeared to be comfortable. Dr. Vines's impression of the MRI on July 11, 2014, was that she has mild multilevel cervical degenerative disc disease and maybe early spondylodiscitis. (R. 355-356).

On July 15, 2014, Dr. Troy Kilpatrick, a family practice physician at Cooper Green Mercy Hospital, treated the claimant for a routine visit to evaluate and refill her medication. Dr. Kilpatrick diagnosed her with hypertension, low back pain, neck pain, and arthritis. For these conditions, Dr. Kilpatrick prescribed Prinivil and Norvasc (both for hypertension), Decadron and Prednisone (both for inflammation), and Valium (for pain) (R. 352).

On August 1, 2014, Dr. Benjamin A. Jones, an internist at Cooper Green Mercy Hospital, gave the claimant a neurological physical exam and found that her problems are non-neurological in origin, but a component of fibromyalgia and degenerative changes in her lumbar

spine may be contributing to her pain. Dr. Jones recommended physical therapy but noted that the claimant was reluctant to do so because she claimed therapy makes her feel worse. (R. 350).

On August 8, 2014, Dr. Retan noted that the claimant said that her pain became stable on medication and that Paxil makes her toss and turn when she sleeps. He noted that her daughter pushed for Xanax or valium as anti-depressant, but Dr. Retan settled for prescribing Lexapro. The claimant used a walker. (R. 347-348).

On October 14, 2014, Dr. Kilpatrick did a physical exam and review of medications on the claimant. Dr. Kilpatrick prescribed the claimant Lisinopril (for hypertension) and Estradiol (for arthritis). (R. 345).

*ALJ Hearing*

At the ALJ hearing on December 10, 2014, the claimant testified that she filed her application for benefits on June 27, 2013, with the alleged onset date of June 27, 2013. (R. 49).

The claimant testified about her accident and her injuries as follows. She stopped working because of back and neck injuries arising from a car accident in June of 2013 and she could not get up after she left the hospital because of her pain. She then went to the emergency room and received a walker; she has used the walker beginning a month after her car accident because she could not walk without it. Her neck pain is like a tremble, where she loses control and has to lie down. She takes high blood pressure medicine, pain medicine, and menopause medicine; the side effects of her medicines interfere with her ability to focus. (R. 54, 57-58, 64).

The claimant testified about how her injuries affect her driving, ability to do chores, and ability to sit. She has a driver's license and only drives occasionally because her "attention span is not very good" and she has difficulty turning her head from side to side, although her pain medication and staying "warm" makes the pain of driving more bearable. She can only stand for

9

about ten minutes to do household chores because standing that long causes her to tremble; she can walk about 20 to 30 feet without her walker. The claimant testified that she can lift or carry five pounds, cannot squeeze a can opener or open a jar of mayonnaise, and can open a regular door but not a heavy door. All moving hurts her because she is "very tender." She cannot write very long and, although she cannot type, she would be unable to do so anyway because her hands start hurting and trembling; she cannot hold anything without dropping it. She testified that she has difficulty sitting in her chair, will "suffer later" from sitting during the ALJ hearing, and can sit and watch TV for ten minutes before she needs to change positions. (R. 53, 57-64).

The claimant testified that, on a typical day, she gets up, uses the restroom, and goes to the kitchen to make toast. Then, she browses through the house, sits in her chair, takes her medicine, which makes her tired, talks on the telephone, and makes a simple lunch. (R. 65).

The vocational expert, John M. Long, Jr., listed the claimant's past relevant work as a security guard, classified as light work; a forklift operator, classified as medium work; an order filler, classified as light work; a home attendant, classified as medium work; and a cosmetologist, classified as light work. (R. 66-67).

In his first hypothetical, the ALJ asked Mr. Long to assume that an individual of the claimant's age, education, and work experience could perform work at the light exertional level with the following limitations: occasional pushing and pulling with both upper and lower extremities; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional balancing, kneeling, crouching, crawling, and stooping; no more than occasional exposure to extreme heat and cold; no more than occasional exposure to vibration; avoidance of all hazardous machinery and unprotected heights; no work requiring walking on uneven terrain;

and able to use a handheld assistive device when walking for ambulation. Mr. Long responded that the individual could not do the past work of the claimant. (R. 67-68).

The ALJ then asked Mr. Long if any additional jobs are available in the national or regional economy that the claimant could do with such limitations. Mr. Long responded that the individual could be a cashier II, classified as light and unskilled, with 6,000 jobs in Alabama and 250,000 nationally; a toll collector, which is classified as light work, with 700 jobs in Alabama and 75,000 nationally; and a parking lot attendant, classified as light work, with 700 jobs in Alabama and 75,000 nationally. (R. 68).

In his second hypothetical, the ALJ asked Mr. Long to assume all of the prior limitations, but change the exertional level from light to sedentary. Mr. Long responded that the individual could not do the past work of the claimant; that none of her skills transferred from her past work to the sedentary exertional level; and that no jobs exist that the claimant could perform with those limitations. (R. 68-69).

Raymond M. Lykins, the claimant's attorney, asked Mr. Long whether the claimant could do any light jobs outlined above if the cane or assistive device were necessary to be able to stand as well to ambulate under the limitations of the first hypothetical. Mr. Long responded that the claimant could not perform any jobs he outlined if she had to use a cane or an assistive device for standing and ambulation. (R. 69).

*ALJ Decision*

The ALJ rendered an unfavorable decision to the claimant on January 26, 2015, and determined the claimant was not disabled from June 27, 2013 through January 26, 2015. The ALJ determined that the claimant met the insured status requirements of the Social Security Act

through December 31, 2018, and that she had not engaged in substantial gainful activity since June 27, 2013, the alleged onset date. (R. 34, 36, 43).

The ALJ analyzed the claimant's severe impairments and her relevant medical history. The ALJ determined that the claimant has the following severe impairments: status post motor vehicle accident with degenerative disc disease, degenerative joint disease, and obesity. The ALJ cited that the claimant does not have any significant mental impairments dating back to June 2011. Through June 2013, the claimant received three epidural steroid injections to help with her pain because of her degenerative disc disease in the cervical and lumber spine. From September 18, 2013 to October 2014, the claimant visited Cooper Green Mercy Hospital many times complaining of pain, but examinations revealed no new findings and no acute pathology for her complaints, with the claimant's daughter "pushing for Xanax or Valium as an anti-depressant." (R. 36-38).

The ALJ determined that the claimant had no severe physical impairment under the Social Security Act based on medical records and the vocational expert's testimony. The ALJ relied on the fact that the record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet any of the listed impairments and that no medical opinions exist indicating that the claimant is impaired. Based on the vocational expert's testimony, the ALJ determined that the claimant could not perform any of her past relevant work, but that other jobs exist in significant numbers that she could do considering the claimant's abilities and limitations. (R. 39-41).

The ALJ then refuted the claimant's subjective allegations regarding her obesity, degenerative disc disease, and degenerative joint disease. The claimant's obesity does not significantly aggravate her other impairments or her ability to work, and medical evidence

supports neither her professed need for a walker, nor her claim to have suffered significant injury or trauma from her accident. Degenerative disc disease is common for individuals her age; while her MRI scans have confirmed degenerative disc disease in the cervical and lumbar spines, no stenosis and no neurological compromise exists. (R. 40-41).

Following SSR 96-7p in assessing the claimant's subjective statements, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that the claimant's statements and other allegations concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible given the medical evidence. In making that finding, the ALJ noted that no treating, examining, or reviewing doctor had indicated that the claimant is disabled or otherwise unable to perform work-related activities. The ALJ gave great weight to examining consultant Dr. Turner's report that the claimant could perform light-to-medium type work. After hearing all the evidence and taking claimant's professed need for a walker into account, the ALJ found that the claimant could perform only light work. (R. 39-41).

Finally, the ALJ determined that the claimant has the residual functional capacity to perform jobs that exist in significant numbers in the national economy. The ALJ considered the claimant's age, education, work experience, residual functional capacity, and the vocational expert's testimony to determine that the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 42-43).

*Additional Evidence Submitted to Appeals Council*

On February 25, 2015, Debbie Hamby, a family nurse practitioner at Cooper Green Mercy Hospital, saw the claimant for a follow-up. The claimant denied any pain and Nurse Hamby found that the claimant had a full range of motion. On May 5, 2015, Dr. Retan noted that

the claimant felt "weakness" and sometimes gets an acute, sharp jab of pain. On May 8, 2015, Nurse Hamby met with the claimant for a follow-up visit for chronic disease. Nurse Hamby noted that the claimant denied any pain and had no acute distress but did appear to have "some limp." (R. 18-23, 25).

The claimant also submitted a record from Cooper Green Medical Hospital dated April 8, 2015, which detailed her medications, problems, and results of her urine test. The relevant medications she takes include: Hydrocodone (for pain), Lisinopril, and Amlodipine Besylate (both for hypertension). Her relevant problems include generalized anxiety disorder, cervical spondylosis, muscle weakness, lumbosacral neuritis, menopause symptoms, chronic pain because of her injury, low back pain, and benign hypertension. Her urine test came back overall as normal. (R. 26-28).

*Additional Evidence Submitted to This Court*

When the claimant filed her case in this court pro se, she submitted medical records with her filing that neither the ALJ nor the Appeals Council considered. Those records included the following information.

On May 5, 2015, Dr. Retan saw the claimant for neck and back weakness. Dr. Retan noted that the claimant indicated that she gets an acute, sharp jab of pain, and takes pain medicine until the pain subsides. On August 4, 2015, Dr. Retan saw the claimant for neck and back pain. Dr. Retan noted that the claimant reported sharp pain in her back, which is relieved by heated rice packs. (Doc. 10 at 14).

On October 7, 2015, Mr. Herman Turner, a physical therapist at Cooper Green Mercy Hospital, gave the claimant physical therapy for her back and neck pain. In his physical therapy discharge note, Mr. Turner told the claimant to continue her home exercise program and

indicated that she has good standing mobility and ambulation with her cane as needed, and that she will benefit from aquatic therapy. (Doc. 10 at 23).

On November 4, 2015, Dr. Retan saw the claimant for numbness in her hands, and tingling and pain in her neck and shoulders. He noted that the claimant felt pleased with the way she felt, and therapy and heated pool are helpful. Dr. Retan made no changes to her treatment. On February 3, 2016, Dr. Retan noted that the claimant said she had tightness and stiffness. He made no changes to her medications. (Doc. 10 at 15).

On May 4, 2016, Dr. Hahn viewed x-rays of the claimant's cervical spine and found degenerative disc disease at C4-5 through C7-T1 discs, with disc space narrowing and spondylosis noted. Dr. Hahn opined that the claimant has lower cervical disc disease. On May 8, 2016, Dr. Retan saw the claimant for neck pain and remote injury and agreed with Dr. Hahn's findings. (Doc. 10 at 6, 15).

On July 2, 2016, Nurse Hamby noted that the claimant visited the St. Vincent's Emergency Room for swelling and pain on her left side. The claimant was treated with an anti-inflammatory medication which was ineffective, with her elbow swelling decreased but remains painful. (Doc. 10 at 3).

On July 6, 2016, Nurse Hamby met with the claimant as a follow-up for her elbow procedure. She found that the claimant had swelling in her left arm, left elbow, and both knees. Nurse Hamby tested the claimant for elbow joint pain. She reported the claimant took the following relevant prescriptions: Amlodipine Besylate (for hypertension), Metformin HCL (for type II diabetes), and Non-VA Hydrocodone (for pain). (Doc. 10 at 16).

On July 12, 2016, Dr. Geoffrey Stephen Connor, an orthopedic surgeon at Cooper Green Mercy Hospital, held a consultation with the claimant regarding her left elbow pain. Dr. Connor

15

noted that the claimant has left elbow pain and swelling that wakes her up at night. He plans to proceed with surgical excision on July 22, 2016, to remove the claimant's left elbow bursa. On August 5, 2016, Dr. Connor met with the claimant as a follow up after her elbow mass excision. He noted the claimant did not have any complaints, had good wound improvement, and full range of motion at the elbow. Dr. Connor gave the claimant a full release and noted she was doing well. (Doc. 10 at 13, 22).

## VI. DISCUSSION

*Pain Standard*

Regarding the first issue, the claimant argues that the ALJ erred in applying the subjective pain standard. This court disagrees and finds that substantial evidence supports the ALJ's reasons for discrediting the claimant's subjective pain allegations.

"The pain standard requires (1) evidence of an underlying medical condition *and either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* (citing *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir.1986)). If the ALJ does not credit the claimant's subjective testimony, he must "articulate explicit and adequate reasons for doing so," and the failure to do so requires the testimony to be accepted as true. *Holt*, 921 F.2d at 1223 (citing *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988); *Hale,* 831 F.2d at 1011, 1054; *MacGregor,* 786 F.2d at 1054).

In the present case, the court finds that the ALJ followed the pain standard guidelines and explicitly and adequately discredited the claimant's subjective pain testimony. The ALJ found evidence of underlying medical conditions, including degenerative disc disease, degenerative joint disease, and obesity, but no medical evidence that confirmed or supported the severity of the claimant's alleged subjective pain arising from those conditions. The ALJ followed SSR 96-7p, which focuses on assessing the credibility of the claimant's statements.

The ALJ found that the claimant's statements and allegations regarding her disability were "not entirely credible" because of various doctor's notes and comments that do not verify the claimant's statements and allegations. Dr. Curtis found her pain to be out of proportion on March 28, 2013; Dr. Trevor Turner found that the claimant could walk without difficulty, sat comfortably, took her shoes on and off without difficulty, and he questioned the claimant's effort in her bilateral upper and lower extremities exam on August 14, 2013; Dr. Retan found disturbing the claimant's failure to describe her pain as burning, sticking, shooting, or stabbing and her lack of response to Lortab on October 1, 2013. (R. 40, 254, 338-342, 347).

Additionally, the ALJ then refuted all of the claimant's subjective allegations. He determined that the claimant's obesity does not significantly aggravate her other impairments or her ability to work; no medical evidence says otherwise. The claimant has had no recorded falls; no doctor prescribed her walker; and no medical record supported the claimant's professed need for a walker. Nevertheless, the ALJ took the claimant's professed need for a walker to ambulate into account in his first hypothetical, and the vocational expert opined that a significant number of jobs exist that she can perform with a walker.

The ALJ refuted the claimant's medical evidence regarding her degenerative disc disease and foraminal stenosis ranging to severe, by citing her epidural steroid injections through June

17

2013, and noting that her medical visits from September 2013 to October 2014 revealed no new findings and no acute pathology for her complaints. (R. 36-38, 281, 291-292, 355). Regarding her pain, the claimant received two epidurals in May and one in June of 2013. On August 8, 2014, Dr. Retan noted that the claimant said that her pain became stable on medication; she denied any pain as late as May 8, 2015.[2] (R. 21-23, 297-299, 347). The ALJ found a lack of medical evidence that she suffered significant injury or trauma from her accident and that degenerative disc disease is common for her age. The ALJ also found that, while her MRI scans have confirmed degenerative disc disease in the cervical and lumbar spines, no stenosis and no neurological compromise existed. (R. 40).

Furthermore, the ALJ proceeded to state that no doctor has deemed the claimant disabled or unable to perform work-related activities, which the record confirms. The ALJ gave great weight to examining consultant Dr. Turner's findings that the claimant could perform light to medium work; that she walked and sat comfortably; that her coordination/station/gait were unremarkable; that she had a normal range of motion of the cervical spine and of the lumbar spine; and that she also had good motor strength and intact motor skills. Even though the claimant "groaned" during the exam of her knees, Dr. Turner found her effort very questionable. *Id.*

Thus, the substantial medical evidence in the record supported the ALJ's opinion in addressing and discrediting the claimant's subjective pain allegations.

*Evidence Submitted to Appeals Council*

---

[2] The ALJ's decision did not consider the May 8, 2015 medical evidence because it was submitted after the ALJ decision but it supports the ALJ's decision.

Regarding the second issue, the claimant argues that the Appeals Council erred in not reviewing her additionally submitted evidence dated after January 26, 2015. The court disagrees and finds that the Appeals Council did not err.

The Eleventh Circuit explained: "We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). The Court reviews "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Id.* The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). If the new evidence is material and "there is a reasonable possibility that the new evidence would change the administrative outcome," then a remand is warranted. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir.1987).

The claimant submitted additional medical evidence after January 26, 2015 and before the Appeals Council denied her appeal on April 20, 2015. The Appeals Council took this additional medical evidence into account and determined that it would not change the ALJ's decision. This court reviewed the additional evidence but found no reasonable possibility exists that it would change the administrative outcome. The new evidence did not show anything that the ALJ did not already evaluate. The only record that may seem relevant dated April 8, 2015, merely summarizes the claimant's prescriptions and medical problems that are shown throughout

19

her medical record. (R. 26-28). So, the additionally submitted medical evidence submitted by the claimant to the appeals council does not justify remand.

The pro se claimant also submitted medical evidence for the first time to this court, which shows no new material information regarding her impairments. The medical records from July and August 2016, were not a part of any medical record submitted to the ALJ or Appeals Council and regard an entirely new elbow injury. (Doc. 10). This court cannot take this evidence into account. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The new evidence is dated 14 months after the Appeals Council affirmed the ALJ's decision and is irrelevant to this application and appeal. Thus, the additionally submitted medical evidence submitted to this court does not justify remand.

## VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is due to be AFFIRMED.

The court will enter a separate Order in accordance with the Memorandum Opinion.

DONE and ORDERED this 31st day of August, 2017.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE